The next case on the argument calendar today is U.S. v. Walker, numbers 18-1933 and 18-2085. You can just pause a moment, Mr. Houston, to let people vacate. Good morning. May it please the Court. I'm Michael Houston. I represent Shameik Walker. I'm going to start my argument today focusing on what I'll call the failure to state a claim, you know, focusing on the issue regarding the 924C count that Mr. Walker was convicted of. It's our position in this matter that the Hobbs Act robbery, which substantiates or is the crime of violence which that is posited on, is not a crime of violence under the Elements Clause of 924Ca. Now, as I acknowledged in my brief, the case law is squarely against me. But you're preserving the issue. Exactly, Your Honor. And I do think that this is the argument that I see developing, and it's taken me time to really, you know, as you look at this, you look at these cases across the country to really get your head around it. And I've been briefing this issue for, you know, in the district and here also. But this is essentially the argument. Looking at Bowen's, which is a Tenth Circuit case, which, you know, and it's with witness tampering. We're not dealing with Hobbs Act robbery. But they're focusing on the issue of property. Now, we know under Barrett, you know, our case law here in this circuit that we use the categorical approach to look at Hobbs Act robbery. And so, you know, the argument goes that if the act can be committed against property, then is that a crime of violence against a person that would trigger the enhancement? And our argument is squarely no. Granted, the Tenth Circuit has precedent against us as well. But I think this is the, you know, and as I read the decisions, and I've read Jefferson and the Tenth Circuit, I've read, obviously, Hill and Barrett, you know, as, you know, I think we have to look at the issue that if an individual is charged in this, with this crime, a Hobbs Act robbery, and a jury is given an instruction, and this type of fact pattern, which is not outlandish, that if someone's property is threatened, which defeats their will, to have them turn over money or whatever to them, then that would substantiate a Hobbs Act robbery. Now, you know, Hobbs Act robbery is a ---- Sotomayor, but, you know, in a Hobbs Act robbery, it's not as though somebody walks into a store and says, if you don't give me the money in the cash register, I shall think less of you. That's correct. You know, I mean, there's an implied threat, although whether it's implied, whether that's sufficient is a legitimate question. But this issue seems to be settled in this circuit. We have to follow Hill, right? Yes, Your Honor. There's no ---- I don't have a dispute with that. I mean, I see this as sort of ---- Could I ask you ---- But I'm trying to develop an argument, and as I'm looking at it, as I see something that's important for us to get our heads around. And let me ---- I'll say this much more about this issue. Just in terms of the hypothetical that you gave, Judge, so, for instance, so if I have, like, data in a ---- on a terabyte on a drive, and it's only located in that one place, and say that there's photos of my children, things that are really valuable to me, and then someone said, I'll destroy that unless you comply, and that breaks your will, and you turn over what you need to turn over to them. I was reading an article, and this is, you know, again, this is sort of future, but in Wire Magazine, where an individual who studies electronic issues, he was hacked on purpose by, you know, professional hackers, because he kept all his information in the cloud, and he described the injury that it caused him, because he can't replace any of those pictures and the information that he had there. So I do think this is something that we're going to have to get our heads around. And it's perhaps that this statute, you know, Mr. Walker did not have to be prosecuted federally. You know, New York State has robbery statutes. You know, he's, you know, by my calculation, you could say a violent predicate. That would be 3 1⁄2 to 15. There's a mechanism in which to address the issue. And Hobbs Act robbery, I think, was designed in a day and age where they were thinking about more about organized crime, things that are just more, you know, more complex. So this is sort of a blunt tool that's being used for really basically, you know, common law robbery. We can revisit this only in bank, and you and fellow criminal defense counsel would have to decide which is a good case to use as a vehicle for that. True. But let me ask you this. Could you turn your attention to the identification of your client by the parole officer? Yes, Your Honor. We brought that up with respect to the evidentiary rule that Judge Weinstein made. Well, there, it seems a number of things. I'll just start, for instance, it seemed unnecessary. And then here you have the Calhoun case that we've set forward, that, you know, here's a person who's submitted a violation of supervised release report, who has a stake in the process against Mr. Walker. So you don't have the full ability to cross-examine this individual. Also, it seems, as we looked at the record of the case, it seems highly unnecessary. You know, the summation, the government's summation, as they talk about the video, you know, the arguments being made, you could see Mr. Walker, you could see his gait. It's clear. It's not 5K clarity, but it's all there. So the jury can see his gait, but they don't necessarily, I mean, see the gait on the video, but they're not necessarily sufficiently familiar with Mr. Walker to know what his gait is or, characteristically, how he moves. That's — well, I'll say this much. During the summation, Mr. Walker stood up and smiled at the jury. And so they did have an — they had an opportunity to observe him under a number of days. But the issue really is that this witness wasn't, in essence, an adversary against Mr. Walker, and that a full cross-examination could not be conducted against this witness because of her standing as his probation officer. And I — and so in the balancing test, the district judge erred. Sotomayor, the judge was — took measures, took a measure to conceal that from the jury, that this was the parole officer. This is a person he interacts with regularly. This is a person at an office that he regularly is required to consult with, something like that. That's true, Your Honor. That issue was — the person — parole officer Parris's true identity was never revealed to the jury. That's correct. But that's not the position that the defense wanted to — wanted. They wanted to be able to cross-examine her and go into the relationship. And so having her in this position as the parole officer is just like, who is this person? And there's nothing really to question the person about. So, Your Honor, I see that my time is up. You have three minutes of rebuttal. Thank you. We'll hear from the government. Good morning, and may it please the Court. Andre Spector for the United States, and I was trial counsel below. I'm going to confine my argument to the question that Judge Jacobs asked about the probation officer. I just want to clarify that it was the trial counsel's decision to mask her and call her not a probation officer, but someone who works for an agency to which the defendant had to report. Who else could that be? How is that — it doesn't really seem to be that practically limiting of an instruction. Well, it was the choice of words that they selected. Now, they had the opportunity to unmask her and probe her, any bias that she has. They were able on cross-examination to explore that she read the complaint, that she spoke to the prosecutors, that she knew that Mr. Walker was arrested, so the jury was able to learn that she's not just a random person, that she's someone who was somewhat involved in this case. And this just falls under the well-settled balancing of Rule 401 and Rule 403. The evidence was extraordinarily probative because the one issue that the defense put at issue in this trial was whether this man, who was at this point wearing a hooded sweatshirt, was Mr. Walker. And things were happening quickly. Now, we argued to the jury that you could still tell it's Mr. Walker, but certainly it's probative for someone who has met with Mr. Walker 18 times, could see his gait, could see his mannerisms, can opine that it is indeed Mr. Walker. And the prejudicial prong of it is certainly no different than what we do in the Rule 404b context, when there's evidence that comes in that's very probative and a disputed element, and yet reveals some sort of prior bad act. And this is no different. And this Court has recognized that this type of evidence is permissible as early as Garcia. Granted, it was not in the context of a probation officer, but other courts of appeals have all recognized that this is appropriate. With respect to the discussion of Hill, I'll just add that not only is Hill dispositive, but the United States Supreme Court decided the Stokelyn case, different statute, but the same idea that when you commit a robbery, you're overcoming someone's will. That's how you take the property. And this case is just a reminder of how violent robberies can be. In this case, Mr. Walker tried to kill the clerk. He flashed the gun at the clerk. So we submit that the issue is settled. Unless Your Honors have questions about any of the other issues raised in appeal, I'm happy to. I think that's fine. Thank you very much. Mr. Houston, you have three minutes rebuttal. Thank you. Just one more issue with respect to Parole Officer Parris. You know, one of the issues that the government put forward in their arguments that there was this desire to disguise himself or this push by the defense to disguise himself. You know, what we did state forward in our briefing, the record does substantiate this, that they sought to introduce Probation Officer Parris' testimony prior to trial. This was just in their playbook. This was something that they were going to do. And the tactical decisions that had to be made on the defense, you know, were to mitigate the harm and sort of substantiate or, you know, keep the position that the defense had at trial in a positive posture for Mr. Walker. Your Honor, I do want to talk about just a couple of other issues. Quickly, in terms of what I've said about, excuse me, the brief that I had put in regarding Raheith, I just want to say again, I understand that Baldy does hit us in terms of the jurisdictional aspect. But one of the things that, you know, we put forward in terms of what we believe is plain error is that the instruction that was given. And we have provided the Court with the Judge Sullivan's decision in Supoveta, where he basically, where he talks about plain instructional error regarding that charge. That, you know, here a knowledge requirement was not presented to the jury. And so Mr. Walker was convicted on an improper basis. Now that we know that, you know, that part of the proof would need to be, you know, put forward to the jury, they would have to make a decision about that. The other issue, Your Honor, is this. Just in reply to the government's argument about, excuse me, on their cross appeal regarding New York's second-degree robbery, again, as I acknowledge in my brief, I understand the rulings in this circuit regarding this, and Piera Gomez and also Thrower. However, you know, as I look at the case law here, and it seems a lot really weighs on a case called People v. Juergens. And, you know, Judge Gold in the Eastern District did a pretty good analysis of that. But the district court was incorrect based on Piera Gomez in finding New York second-degree robbery was not a violent felony. Well, I mean, don't those cases establish that? Well, Your Honor, we agree with the district court in this case that those cases do not, you know, that to me second-degree robbery is not a crime of violence. We understand. You say they don't hold that? Your Honor, the case law does, but Judge Weinstein made a different decision. We think Judge Weinstein's decision was the correct decision. But I must acknowledge the case law that exists. But I do think that the case law that's been built, and this, again, let me just finish my thoughts, Your Honor, about Juergens. I think it, you know, goes to the heart of what I'm talking about, that, you know, in looking at New York State case law, that the decisions that are being relied upon in the Second Circuit are focusing, you know, quite notably on these people v. Juergens, where they're saying that there was, excuse me, a purse snatching would not qualify as a robbery under New York law. And that was just an agreement against the parties. And that's been cited as to more or less say that simple purse snatching is not enough. Now, I'll note this. In a Stead case, and I think this is really important, you know, Stead looked at this issue, attempted second-degree robbery, and he talked about purse snatching. And what's interesting there is that, you know, a couple of things they pointed out, that looking at the precedent from prior to 2000, and again, this is a conviction from 1991, that New York law at that time, looking at, in that era, purse snatching would certainly suffice. Even Stoeckling talks about purse snatching not being a crime of violence. Am I correct? I mean, I understand your view that Judge Weinstein was correct, even though the controlling law goes the other way. I mean, I've been in that position myself. But the question is, there has to be three underlying offenses. And Judge Weinstein just reached one. So if he was wrong about that, and it appears that he was, there's still two others. Did you mount any challenge to the two remaining convictions? Yes, Your Honor. In the sentencing, I did. But the district court did not reach those. That's correct, Your Honor. He did not. And in fairness, in terms of the judge found that one was invalid. That's correct, Your Honor. And what he says is that, because I have disqualified the second-degree robbery, it's unnecessary for me to make a review under ACCA with respect to there are two. There was the strong-arm robbery. Those issues would still be open. That's our position, yes, Your Honor. Okay. Thank you. All right. Thank you. I think we have the arguments. Thank you. We'll take the matter under advisement.